## PULLMAN PALACE CAR COMPANY v. C. A. ARENTS.

### Decided January 8, 1902.

**1.—Jurisdiction—Carrier—Loss of Baggage in Mexico.**

Where plaintiff, holding a railroad ticket from a station in Texas to one in Mexico, entered a sleeping car at the Texas station, though his ticket was not taken up nor his sleeping car fare collected until the train had entered Mexico, he was a passenger from the Texas station, and his contract with the sleeping car company was practically entered into there, and for a loss of his baggage from the car, occurring in Mexico, he could sue in a county in Texas wherein the sleeping car company had an agent, although neither plaintiff nor defendant is a resident of Texas.

**2.—Carrier—Value of Baggage—Evidence.**

A judgment for the value of lost baggage in about one-third of plaintiff's estimate, his testimony being the only evidence on the point, will not be disturbed, on complaint made for the first time in the appellate court, because a part of plaintiff's testimony was inadmissible.

**3.—Same—Liability of Carrier—Negligence—Presumption.**

The fact of a loss of baggage from a sleeper does not of itself make the sleeping car company liable or raise any presumption of negligence, and to authorize a recovery therefor it must appear that the loss was due to some negligence of the company's servants.

4.—Same—Evidence.

Evidence considered and held sufficient to sustain a finding in effect that plaintiff's baggage was lost by theft from the sleeping car through negligence of the defendant's servants.

Appeal from the County Court of El Paso.   Tried below before Hon. James R. Harper.

*Richard F. Burges,* for appellant.

*Maurice McKelligan,* for appellee.

JAMES, Chief Justice.—Arents sued to recover the value of a valise and traveling bag alleged to have been stolen from appellant's car, at Chihuahua, Mexico.   The case was tried by the judge without jury and judgment was rendered for plaintiff for $136.

The first assignment presented by appellant's brief is that the court erred in overruling a motion to dismiss for want of jurisdiction, after the testimony was in, for the reason that neither plaintiff nor defendant was a resident or citizen of Texas, and that the contract out of which plaintiff's cause of action arose was entered into without the State, and was to be performed and was performed wholly without the jurisdiction thereof, and because the alleged acts of negligence out of which this cause of action arose occurred wholly without the limits of the State.

The facts were that plaintiff, holding a first class railway ticket from El Paso to Jimenez, in the republic of Mexico, entered and was received into the sleeper in question at the station at El Paso, although his ticket, for convenience of the carriers, was not taken up nor his sleeping car fare collected until after the train left Juarez station, in Mexico, opposite El Paso.   The fare was undoubtedly collected from El Paso; plaintiff was a passenger from that point, and the contract relative to his carriage was practically entered into there.   It was proved that defendant had an agent at El Paso, which under our statute authorized suits against defendant to be brought in that county. We entertain no doubt of the correctness of the order overruling the motion.

The next assignment is that the court erred in finding that the value of the articles lost by plaintiff amounted to $136, for the reason that all the testimony failed to show the true value of the articles, or to establish any basis or measure by which the value thereof could be accurately determined.   The propositions of law relied on and advanced under the above assignment are that "in a suit for the value of secondhand clothing as of anything else the measure of damages is the market value, unless it be shown the articles have no market value." "Where articles lost have no market value the actual loss in money to the owner (not any fanciful price he might for special reasons set on them) would afford the measure of damages."

The only testimony as to value was plaintiff's, and though some of his testimony may have been improper according to strict rules of evidence, yet no objection was made to it, and was at least relevant to the subject of damages. We do not believe that a judgment ought to be disturbed because objectionable testimony as to value was introduced, on complaint made for the first time in the appellate court, unless perhaps it should be manifest that a gross injustice has been done. This can not be claimed, because the trial court in this instance did not give judgment to the extent the evidence of value went, but for about one-third of what it indicated.

The remaining assignment contends that the evidence did not warrant finding that the loss was due to negligence of defendant's servants; and that plaintiff's own testimony showed that the loss was due to his contributory negligence in leaving the baggage under an open window and lying upon a seat within easy reach of anyone outside the car.

In these cases it is well settled that the fact of loss of baggage from a sleeper does not of itself make defendant liable, or raise any presumption of negligence; and that it must appear that it was due to some negligent conduct of defendant's servants. Of course if plaintiff's own negligence contributed he could not recover. These principles require no citation of authorities.

The court must necessarily have resolved these issues in favor of plaintiff, and the assignment requires us to decide whether or not the evidence is such as to warrant these conclusions.

It appeared that one of defendant's rules requires its employes to close the car windows and the rear door of the car when entering a large station like Chihuahua. This is required doubtless in the proper exercise of care in reference to thefts of the property of defendant and its guests. This car had a conductor and two porters, one of whom was buffet cook. The train stopped first at a pumping station. The conductor testified that he knew that before the train stopped at the pumping station the windows of the car were all down and the rear door closed, and that they were closed after leaving it and when they ran into the main station. That the rear door remained locked until after the train left Chihuahua, and that at the station the porter remained by the front steps and himself remained near there, and that the buffet waiter went into the depot to get supplies. The porter testified that he went through the car and closed the windows before the train stopped at Chihuahua on the night in question, and were all down when he left the car to stand at the steps to help passengers on and off, as the rules required of him. It was about 9 o'clock when they left Chihuahua. None of the berths were made up. It does not appear whether the window in question was on the side towards or from the station.

Plaintiff testified that he left the car at this station to go outside. That his grip was under an open window and the handbag was on the seat next the open window. Two passengers were sitting at the window

where his baggage was, and not liking to disturb them, and thinking his baggage safe, as they made no attempt to leave the car; he went out without closing the window, as he otherwise would have done. While he was gone these passengers went out leaving the window open, and soon after plaintiff returned into the car they also came back. The loss of the baggage was discovered a few minutes after leaving the station. Plaintiff says one porter (presumably the one on the steps) left the car unguarded while he priced a Chihuahua dog, and that the conductor had not been in the car for some time before reaching Chihuahua, and was not in it when plaintiff left it.

There is nothing in the evidence to contradict the testimony that the rear door was closed nor that the car windows were closed when the car was entering the station. But when plaintiff left the car after it stopped, the window in question was open, and all the employes were out of the car, the porter being at or near the steps, the conductor on the outside on the same side, and the cook inside the station. The window was probably opened as the car stopped by the passengers who ocupied the seat.

The conduct of plaintiff in going out without closing the window and leaving his effects as they were may have been negligence on his part, but not so as a matter of law under the circumstances. He may have had, as it seems he did have, some fear for the safety of his baggage on account of the open window, but two fellow passengers were sitting at the window without any apparent intention of leaving, and whether or not he acted under the circumstances as an ordinarily prudent man would have done in going off for a while leaving his baggage there, was a question of fact.

As to negligence of defendant's servants. The record does not show definitely how long the train stopped at this station, but as the conductor testified that "the loss presumably occurred between 9 and 9:10 o'clock" we may infer that it stopped that long. The time was near the end of June. Although the employes may have seen that the windows were down when the train stopped, it may be that due care for the safety of property in the car, which was a question of fact, required something more in the way of vigilance on their part. A jury may have believed that they had no just reason to presume that the passengers within would allow the windows to stay closed for such length of time, and that the car should have been more closely watched by them than it was. The rule requiring the windows to be closed on entering large stations as this one, indicates the existence of unusual risks at such places, and that the closing of windows, or guarding them, or other precautions should be taken to protect property inside the car from thefts. The rule having for its object such precaution would seem to involve more dilligence than that the servants should merely close the windows as the train enters a station and go off about other matters, paying no further attention to them, where the stop is for a considerable time and conditions are such as make it probable that they

would be opened. The conductor admitted to plaintiff that this was his first trip and he was not familiar with all his duties. It seems incomprehensible that a theft of this kind through a window could be perpetrated on the side of the car toward the station, when the light was bright and both the porter and conductor on that side, if any diligence at all had been observed. On the other hand, if the act was done through a window on the dark side, the evidence shows that none of the employes paid any attention to that side. We conlude that there was sufficient testimony to warrant finding that the loss was due to negligence of defendant's servants.

*Affirmed.*